HON. PIERPOINT ISHAM, } ASSISTANT JUDGES.
HON. MILO L. BENNETT, }

---

J. W. CARTER & BROTHER *v.* WRIGHT & HART.

*Book Account.  Partnership.  Witness.*

The parties, in an action of book account, are witnesses to the same extent, where a question of partnership is concerned, as other witnesses, and may testify to every material fact, proper to be considered in deciding the merits of the case.

An inquiry, as to how one of the defendants obtained bail, and who became his bail, having no bearing upon the merits of the case, is improper.

BOOK ACCOUNT.  Judgment to account was rendered in the County Court, and the case was referred to auditors, who reported the following facts:

That in December, 1849, John Wright, one of the defendants, who then resided in Boston, Mass., came to Burlington for the purpose of getting up a Railroad Celebration or Jubilee, at said Burlington ; that he stopped at the defendant Hart's Hotel while there, and had conversation with said Hart, relating to such celebration; and that at that time, defendants, Wright and Hart, examined the rooms in said Hart's Hotel, and a vacant lot of ground, opposite said hotel, on Water Street in Burlington, belonging to Judge Follett. That said Wright proposed, to construct a temporary building or tent upon said vacant lot and connect it with Hart's Hotel, by a bridge or arch, and that said Hotel and tent, so to be constructed, should be used for the celebration ; that this plan was approved by defendant Hart, and for the purpose of · carrying out this plan or arrangement for such celebration, Wright and Hart agreed in general terms, that they would go on together and get up the celebration, provided, the Railroad Companies would give the celebration their approval, and reduce their fares; that Hart was to purchase such things as could be bought in Burlington, and Wright to purchase such things in Boston as could be best bought there. That Wright and Hart went to Ludlow to see Judge Follett, who was then at that place, and that Judge Follett thought, the time for a celebration had not then arrived, as neither of the Railroads were completed; the parties remained at Ludlow, some three-fourths of an hour, and then departed, Wright taking the cars for Boston, and Hart returning to Burlington, no time for the celebration having been agreed upon.

It did not appear, that Wright and Hart had any farther communication with each other relating to the celebration, until April or May, 1850, when Wright again came to Burlington, to make farther arrangements for the said celebration.

That at this time, it was ascertained that they could not have the said vacant lot, as was contemplated in December, 1849, and that some other place must be provided for the tent; that he, Wright, made arrangements with the several Railroad Companies to carry persons for half fare; that Wright was several times at Burlington, during the months of May and June, making arrangements for the celebration, which came off on the 25th day of June, 1850, and the tent was erected, on the " camp ground," about one half-mile north of said Hotel and vacant lot.

That said Hart's agreement with Wright in December, 1849, was with reference to the erection of a tent or building on said vacant lot by Wright, to be connected with Hart's Hotel, as before stated, and not otherwise; and that thereafter, said Wright proceeded alone in making his arrangements for the celebration, and on his own account, and that said Hart was not a partner in making the celebration, nor at the time when the goods charged in the plaintiffs' account, were sold to Wright.

That in the spring of 1850, Wright employed one Thomas Nourse, as his agent to assist him in getting up the celebration, and that said Nourse acted as Wright's agent in making purchases and arrangements therefor ; that plaintiffs were informed as early as the latter part of May or early in June, 1850, by Wright, that he had made an arrangement with Hart, to go on together in the celebration, and that plaintiffs sold the goods and gave the credit, relying upon the information given them by Wright and Thomas Nourse, and the responsibility of Hart.

That there was no testimony tending to prove, that Hart gave them any authority to make any such, or any other representation, relating to his being connected with Wright in said celebration, or that he had any knowledge, that such representations were made, (except the testimony of Wright and Nourse tended to show that Wright and Hart were partners in said celebration.)

That it appeared, that the next day after said Railroad celebration, there was a Masonic celebration in the same tent, and that Wright used the same furniture, that had been used the day before, &c.

The County Court rendered judgment on the report for defendants.   To which plaintiffs excepted.

*H. E. Smith* and *Underwood & Hard* for plaintiffs.

The auditors found, that Wright and Hart, in December, 1849, entered into a contract by which they were partners in getting up a Railroad celebration; and Wright was authorized to purchase goods in Boston and Hart in Vermont.

That under this contract, Nourse was hired, and plaintiffs were informed by Wright and Nourse, of the nature of the contract, and sold the goods in question, upon the responsibility of Hart. The auditors farther found, that there was no evidence tending to

show, that Hart and Wright ever rescinded the agreement entered into in December, 1849.

These facts render Hart liable to the plaintiffs, for the goods thus sold and charged in plaintiffs' account. Story on Part. §194. *Williams* v. *Jones,* 5 B. & C. 108.

*C. Noyes* and *Phelps & Chittenden* for defendant Hart.

The sole question upon the merits in this case is, was Hart a partner with Wright in the transactions referred to ?

1. The auditors have distinctly found and reported, that he was *not* a partner, nor in any way interested or concerned in the matter. Their finding upon this point is conclusive. The court will not inquire into its correctness. The evidence is not before them, and it would be idle to attempt it, upon the detached circumstances, and scattered pieces of testimony incorporated for other purposes into the report.

2. If the decision of the auditors were not conclusive, the judgment of the County Court would be, as necessarily involving a finding of the fact. *Stone* v. *Foster* 16 Vt. 546. *Birchard* v. *Palmer,* 18 Vt. 203.

3. The representations made by Wright, are expressly found to have been untrue in point of fact, unauthorized by Hart, and without his knowledge. *Bounce* v. *Freeth,* 17 Com. Law, 460. Story on Part. §150, 151. Collyer on Part. 78, 97.

The opinion of the court was delivered by

REDFIELD, Ch. J.— It is important to consider the general merits of this case, as the importance and construction of the incidental questions, depend very much upon the view the court take of the rights of the parties, as presented by the general facts in the case, in regard to which, there seems to be no ground of question, upon the finding of the auditors.

It is found by the auditors, that the representation made by Wright and Nourse to the plaintiffs, upon which they delivered the goods, upon the joint credit of defendants, was that the defendants were in partnership at the time the goods were delivered. The truth of this representation is expressly negatived, by the finding of the auditors. The defendants then, are not jointly liable for the plaintiffs' claim upon the ground, that they were, in fact, partners.

Carter & Brother *v.* Wright & Hart.

The only other ground, upon which they can be made liable is, that they so conducted, as to justify the plaintiffs in treating them as partners, and to deliver the goods charged in this account, upon their joint credit. In other words, that the conduct of Hart was such as to justify the plaintiffs in trusting to the representations of Wright and Nourse, without further inquiry. This depends in some sense, upon the extent of the contract of December, 1849. And although it is not very certain, precisely what were the expectations of the parties, in regard to that contract, still it seems to us, there is nothing in the case to show, that anything was ever done under that contract, by Hart, which would make it reasonable for any one to presume, or infer, that he considered, he was actually carrying forward and putting into operation a partnership. Indeed, we understand the auditors to find expressly, that he did nothing towards carrying the contract into effect, while any partnership was in contemplation. This seems to have been abandoned, when Wright was up in April or May, and before that, Hart had done nothing, except to go to Ludlow, to see whether any such thing could be accomplished. And the scheme seems then to have been given up, for the time, with the expectation certainly, that, at some future time, it should be carried into operation ; under these circumstances, it seems to us, that both parties had a right to expect, that nothing farther should be done, until the parties met and settled the *scheme,* so to speak, of the partnership transaction. It would have been regarded, as very absurd, for Hart to have gone forward immediately, to carry the celebration into effect, or indeed, to have done anything, in furtherance of the general object contemplated, until the minds of the parties met upon the thing to be done, and the time and place of its accomplishment.

So equally was it a thing altogether aside of the duty, or authority of Wright, to employ an agent, or to make, or authorize the agent to make purchases, or representations of, or upon the joint liability. It was a mere assumption, on the part of Wright, as it seems to us, and as such, no way binding upon Hart, or justifying the plaintiffs, to regard Hart, as a partner, without farther inquiry. If plaintiffs have trusted to a false representation of Wright, they should bear the loss. No actual operative partnership, ever existed between the parties, unless the whole was a partnership. The

contract which was made, on the most favorable view for the plaintiffs, was merely preliminary or executory, to constitute themselves partners in a transaction, to be carried forward at some indefinite time future, which no more constitutes a present partnership, than if the time of its contemplated existence, had been fixed by the contract. It was evidently not to go forward, until the farther action of the parties. It was therefore, strictly revokable, or rescindable, at the election of either party ; and was in fact never consummated.

Under this state of facts, it seems impossible to say, that Wright was fairly justified in going forward, without the farther consent of Hart. What he did therefore, and what Nourse did, being in fact merely the agent of Wright, they did altogether, without any constructive consent of Hart, and by consequence, in their own wrong; and Hart is not to be affected thereby. The fact, that Wright employed Nourse, before it was ascertained that the tent could not be erected in the vacant lot adjoining defendants' hotel, does not seem to be important, inasmuch as no arrangement was made, whereby Wright had any present authority to employ an agent, or make contracts, or representations, on behalf of the defendant, Hart. We think therefore, most obviously, that on the finding of the auditors, and it seems sufficiently explicit, it is impossible to regard the defendant, Hart, as a copartner of Wright, in fact, or that he did anything, which would justify Wright, or Nourse, as so representing him, or the plaintiffs in treating him as such.

In regard to most of the exceptions taken upon the trial, and they seem to have been very numerous, and sufficiently minute, most of them, seem to proceed upon some basis, or supposition, that the parties were not witnesses to the same extent, and liable to the same impeachment or contradiction, in the action of book account, where a question of partnership is concerned, as other witnesses. But of this, there can be no doubt whatever. That is determined, in the fullest, most unqualified manner, in *Clark* v. *Marsh, Administrator*, 20 Vt. 338. I could scarcely add much to what is there said, and the court have not found any occasion, to recede from the views there announced.

An objection is made, in different forms, to inquiries made in regard to the conduct, and declarations of the defendants towards each other, and as to Wright's conduct of the business, as tending

to make out, that at the time neither Wright or Hart treated the transaction, as a joint undertaking, but the sole business of Wright. It seems to us, that this objection is not well founded. These things were a part of the transaction, the *res gesta*, and the very question to be determined by the auditors was, what was the trans-action. The testimony was then to the very point in controversy.

The objections taken and reserved by the plaintiffs, seem, all to range themselves more or less nearly, under one or the other of these heads, except the inquiry, as to how the defendant, Wright, obtained bail and who became his bail. And this inquiry, is so remote, that it seems singular, how any one should have regarded it, as having any legitimate bearing upon the determination of the question, at issue; and it was therefore, as we judge, improperly admitted. But it is so remote, that it seems to us absurd to suppose it could have had any bearing, in determining the finding of the auditors. We should not therefore feel justified in opening the case upon that ground.

1. Nourse's letter is important, if at all, in showing how he represented the matter at the time, and especially to Hart, as affecting his credit, as a witness.

2. The accounts rendered, at the time, between the defendants, are undoubtedly an important part of the transaction, upon the question, whether there was a partnership, in fact.

3. The same may be said of the order of Hart on Ketcham & Moore. It was a part of the transaction and tended to show how the parties, especially Hart, treated it, at the time.

Judgment affirmed.